UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NUMBER 3:24-CV-735-RGJ-LLK


MARCEL RIVERO PEREZ                                                    PETITIONER

v.

SUPERVISORY DETENTION AND
DEPORTATION OFFICER, in his/her official capacity as
Field Office Location Director, Louisville Enforcement and
Removal Operations, U.S. Immigration and Custom Enforcement;
ROBERT GUADIAN, in his official capacity as Field Office
Director, Chicago Field Office, Enforcement and Removal
Operations, U.S. Immigration and Custom Enforcement; and
TERRI ROBINSON, in her official capacity as Director,
National Benefits Center, U.S. Citizenship and Immigration
Services                                                              RESPONDENTS


REPORT AND RECOMMENDATION THAT
RESPONDENTS' MOTION TO DISMISS [DN 14] BE GRANTED

An immigration judge denied Petitioner Marcel Rivero Perez's application for asylum,

statutory withholding of removal, and protection under the Convention Against Torture ("CAT"),

and entered a removal order on August 18, 2020. [DN 11-1] at 34-35. Petitioner was released from

custody into the United States on December 30, 2020, due to his COVID-19 risk factors, and was

issued an ICE Form I-220B Order of Supervision setting forth conditions of his release. [DN 11-

1] at 36-38. Petitioner filed a counseled Amended Petition for Writ of Habeas Corpus & Complaint

for Injunctive and Declaratory Relief (Amended Complaint) [DN 11] contending that he should

not be subject to the ICE Form I-220B Order of Supervision and associated conditions, arguing

that it was issued in violation of applicable immigration law. He seeks habeas relief from ICE

supervision, an Order compelling ICE to issue a Form I-94 documenting his parole into the United

States, and an Order vacating the USCIS Decision denying his I-485 Application to Register Permanent Residence or Adjust Status. Petitioner argues that his detention was governed exclusively and at all times by 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) under the expedited removal statute, and his release could only have been granted via discretionary parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Respondents counter that mandatory detention of Petitioner Perez under 8 U.S.C. § 1225(b)(1) ended once his asylum application had been fully considered in § 1229a proceedings; thereafter, 8 U.S.C. § 1231(a) controlled his release on supervision.

Respondents filed a Motion to Dismiss Petitioner's Amended Complaint [DN 14] to which Petitioner filed a Response [DN 15] and Respondents filed a Reply. [DN 16]. United States District Judge Rebecca Jennings referred the Motion to Dismiss to the undersigned for preparation of a Report and Recommendation. [DNs 17, 18.] The matter is now ripe for adjudication. For the reasons that follow, the recommendation is that Respondents' Motion to Dismiss be GRANTED.

## I. ADMINISTRATIVE BACKGROUND

Petitioner Perez is a native of Cuba who resides in Kentucky and who sought asylum in the United States. Perez entered the U.S. on January 13, 2020, after having traveled from Cuba through Nicaragua, Honduras, Guatemala and Mexico. [DN 11] at 15. He applied for admission into the United States from Mexico at the Texas border, Del Rio International Bridge crossing, and presented a copy of his Cuban passport and a Cuban identification card. Perez was found to be inadmissible because he did not have the necessary entry documents[1] and was initially processed

---

[1] Perez's record indicates the following disposition: Subject RIVERO PEREZ, Marcel is inadmissible into the United States pursuant to section 212(a)(7)(A)(i)(I) of the INA and was processed for Expedited [redacted] Credible Fear under the provision of section 235(b)(1) of the INA as per Chief [redacted] Forms I-860, M-444 (Spanish) I-296, and List of Legal Services were executed and the subject was served with Forms M-444 (Spanish) and List of Legal Services. Subject was detained pending a Credible Fear Interview. Form I-831, [DN 11-1] at 3.

for expedited removal pursuant to § 235 of the INA (8 U.S.C. § 1225[2]). He was detained pending a credible fear interview. [DN 11-1] at 2. Database queries by Customs and Border Protection revealed no criminal history, derogatory immigration history or illegal apprehension records for Perez. *Id*. The January 13, 2020, Form I-860 Notice and Order of Expedited Removal (NOER) indicates that Perez received a "Determination of Inadmissibility" because he did not possess the requisite documentation to allow his entry into the United States; notably blank, however, are the Order of Expedited Removal and Certificate of Service portions of this form. [DN 11-1] at 10.

Because Perez indicated that he was seeking asylum and feared persecution if he returned to Cuba,[3] he was detained until an asylum officer could complete a "credible fear" interview. On February 1, 2020, USCIS Asylum Officer Adriana Huertas conducted Perez's credible fear interview with the assistance of an interpreter. [DN 11-1] at 13-31. Despite indications that the asylum officer thought he was credible,[4] she made a "negative credible fear of persecution determination" finding that Perez was barred from asylum pursuant to the third-country-transit ban—8 C.F.R. § 208.13(c)(4)—in effect at the time of his interview:[5]

---

[2] Where pertinent in this Report and Recommendation, the United States Code citations that correlate to referenced Immigration and Nationality Act sections are provided.

[3] Petitioner Perez indicated to immigration and asylum officers that he fled his home country after he was threatened, detained, and beaten by Cuban police. The Cuban police also threatened his employer, and Perez lost his job as a result. [DN 11-1] at 3.

[4] Asylum Officer Huertas' notes in the Record of Determination/Credible Fear Worksheet indicate "Applicant found credible," and that a "Credible fear … of torture [is] established." [DN 11-1] at 15.

[5] 8 CFR § 208.13(c)(4) was known as the third-country-transit ban and went into effect on July 19, 2019, 2019 WL 3081898. The ban operated to disqualify those seeking asylum in the United States if they did not first seek protection in a country they passed through on their way to the United States. 84 FR 33829. (There were limited exceptions to the third-country-transit ban, but none which apply in the present case.) The ban was immediately challenged in federal courts on several grounds, and vacatur of the ban was entered: "For these reasons, the Court holds that vacatur is the appropriate remedy and that neither remand without vacatur nor a stay of vacatur is warranted." *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F. Supp. 3d 25, 60 (D.D.C. 2020). In a separate action, a preliminary injunction against enforcement of the ban was entered on July 6, 2020, and went into effect for the four states that border Mexico. *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, (9th Cir. 2020). The third-country-transit ban was challenged on the basis of the Departments' failure to demonstrate good cause for foregoing notice-and-comment rulemaking in violation of the Administrative Procedures Act. However, the Supreme Court's July 8, 2020, decision in *Little Sisters of the Poor Saints Peter and Paul Home v. Pennsylvania*, 140 S.Ct. 2367 (2020) found that an Interim Final Rule's publication as an IFR rather than a Notice of Proposed Rule Making (NPRM) did not invalidate the rule; rather, the Court focused on whether "fair notice" was provided to the public. *Id*. at 2385. Based upon the *Little Sisters* ruling,

Alien is barred from asylum pursuant to 8 C.F.R. § 208.13(c)(4) and therefore the alien has not established a significant possibility of establishing eligibility for asylum and **has received a negative credible fear of persecution determination**. Alien was then screened for potential entitlement to withholding under INA 241 or CAT protection under a "reasonable possibility of persecution" and "reasonable possibility of torture" standard.

DN [11-1] at 16 (emphasis added).

The asylum officer continued the interview to address the two remaining protections available to Perez (as an asylum seeker barred by the third-country-transit ban) and found that he met the higher "reasonable fear" standard[6] for statutory withholding of removal under 8 U.S.C. § 1231(b)(3) and CAT protection under Article III of the Convention Against Torture.[7] [DN 11-1] at 29-30.[8]

---

the Departments determined that the rulemaking procedures followed for the Asylum Eligibility and Procedural Modifications at 8 CFR Part 208 were procedurally sufficient and would therefore become effective on January 19, 2021. Federal Register, Volume 85, No. 243, December 17, 2020, Rules and Regulations #82260.

[6] In the Credible Fear Determination Checklist and Written Analysis for Applicants in Expedited Removal Found Barred From Asylum Pursuant to 208.13(c)(4), the asylum officer included the following analysis:

There is a reasonable possibility the applicant can establish the feared harm would be inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity. The applicant was beaten and threatened by the State Security in Cuba. The applicant inherited a rifle from his grandfather and he registered in a hunting association. Because of this, the police wanted the applicant to collaborate in reinforcement. The applicant refused and he was detained and beaten. The police told him that if he did not collaborate with them, he would be imprisoned. After this detention, he received a warning letter from the authorities and he was fired from his job as a result. Before departing the country, he was forced to sign a statement swearing he would return by a certain date. If he did not return, charges would be placed on him and he would be imprisoned.

Relocation: Since the Government is the applicant's persecutor, relocation is presumed unreasonable. This presumption was not rebutted. Country of Origin information shows the Government of Cuba committed most human rights abuses and failed to investigate or prosecute those who committed the abuses. https://www.state.gov/reports/2018-country-reports-on-human-rights-practices/cuba/.

[DN 11-1] at 30.

[7] The guidance to 8 C.F.R. § 208.13(c)(4) Asylum Eligibility and Procedural Modifications adopting the third-country transit ban for aliens seeking asylum provides:

Aliens determined to be ineligible for asylum by virtue of falling subject to the third-country-transit bar, however, would still be screened, but in a manner that reflects that their only viable claims could be for statutory withholding or CAT protection pursuant to 8 CFR 208.30(e)(2)-(4) and 1208.16. After determining the alien's ineligibility for asylum under the credible-fear standard, the asylum officer would apply the long-established reasonable-fear standard to assess whether further proceedings on a possible statutory withholding or CAT protection claim are warranted.

Federal Register, Volume 84, No. 136, July 16, 2019, Rules and Regulations 33829, 33837.

[8] The final page of the Credible Fear/Reasonable Fear Background Identity and Security Checklist appears to have been redacted. [DN 11-1] at 31.

Three days following his credible fear interview, a Notice to Appear (with date and time "TBD"[9]) was issued for Perez, placing him in standard removal proceedings pursuant to § 240 of the INA (8 U.S.C. § 1229a). [DN 11-1] at 32.[10] On August 18, 2020, Judge Robert R. McKee held a hearing in Petitioner Perez's case.[11] A summary of the oral decision entered on August 18, 2020, indicates that Perez was ordered removed from the United States to Cuba; that his applications for asylum, withholding of removal, and deferral of removal under the Convention Against Torture were denied; that appeal was waived; and that personal service of the decision summary was made to the "ALIEN c/o Custodial Officer." [DN 11-1] at 34-35.

On December 30, 2020, while awaiting removal, Perez received a Notice of Custody Determination indicating that he was to be released subject to conditions. [DN 11-1] at 36-37. He was released from custody due to his Covid-19 health risk factors as judicially mandated by *Fraihat v. U.S. Immigration and Customs Enforcement*, 445 F.Supp.3d 709 (C.D. Cal. 2020).[12] The conditions of his release were outlined in an ICE Form I-220B Order of Supervision. [DN 11-1] at 38-41. Almost two years after his release from custody, Perez filed a counseled Form I-485 to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act (CAA) on December 5, 2023. [DN 11-1] at 54-65. While Perez's I-485 application for adjustment was pending before United States Citizenship and Immigration Services (USCIS), he filed his initial

---

[9] In immigration law, a Notice to Appear with "TBD" or with no specified date and time identified is referred to as a "dummy notice." The Supreme Court has found them to be sufficient for purposes of due process if under § 1229a(b)(5)(C)(ii) a proper notice of hearing was issued, informing the alien of the time and date of the hearing the alien missed, and at which he was ordered removed. *Campos-Chaves v. Garland*, 602 U.S. 447, 460–61, 144 S. Ct. 1637, 1649, 219 L. Ed. 2d 179 (2024).

[10] The Certificate of Service indicates that Perez was served with the Notice to Appear on February 6, 2020.

[11] The record does not include the official Order of Removal or transcript of the August 18, 2020, § 240 removal proceeding before the Immigration Judge. [DN 11-1] at 34-35.

[12] In the early days of the Covid-19 pandemic, a California district court granted a preliminary injunction ordering federal immigration detention centers to conduct custody redeterminations of detainees to identify those with medical risk factors which placed them at "heightened risk" of severe illness and death should they contract COVID-19. *Fraihat v. U.S. Immigration and Customs Enforcement*, 445 F.Supp.3d 709 (C.D. Cal. (C.D. Cal. 2020), order clarified, No. EDCV 19-1546 JGB (SHKX), 2020 WL 6541994 (C.D. Cal. Oct. 7, 2020), and rev'd and remanded, 16 F.4th 613 (9th Cir. 2021).

Complaint in this Court on December 19, 2024, seeking habeas corpus relief from the December 30, 2020, I-220B Order of Supervision and seeking to compel USCIS to act on his I-485 application. [DN 1] at 1.

In a USCIS Notice of Decision dated February 26, 2025, Perez's I-485 Application to Register Permanent Residence or Adjust Status under Section 1 of the Cuban Adjustment Act was denied, [DN 11-2] at 1. The Notice of Decision indicates that Perez's application failed because he was unable to meet the "inspected and admitted or paroled" requirement for adjustment of status under the CAA. Upon issuance of the unfavorable determination by USCIS, Respondents promptly filed a Motion to Dismiss Petitioner Perez's Complaint. [DN 8]. District Judge Jennings thereafter entered the parties' Agreed Order for Extension of Time, extending the time in which Petitioner could either file a response to the Motion to Dismiss, or file an Amended Complaint. [DN 10]. Petitioner Perez elected to file this Amended Complaint [DN 11], and Respondents filed the present Motion to Dismiss [DN 14].

## II. <u>JURISDICTIONAL AND THRESHOLD ISSUES</u>[13]

District courts have jurisdiction only where Congress has provided. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). District courts may grant a writ of habeas corpus to any person who demonstrates he is in custody in violation of the Constitution or laws of the

---

[13] The Respondents have not argued that Petitioner was required to exhaust his administrative remedies. The Sixth Circuit has not yet decided "whether courts should impose administrative exhaustion in the context of a noncitizen's habeas petition," *Pizarro Reyes v. Raycraft*, No. 25-cv-12546, 2025 WL 2609425, at *3 (E.D. Mich. Sept. 9, 2025) (citing *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 1:25-cv-1621, 2025 WL 2444114, at *8 (N.D. Ohio Aug. 25, 2025), and "has not formally adopted a standard for determining when prudential exhaustion applies." *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486, 2025 WL 2496379, at *4 (E.D. Mich. August 29, 2025). The court may use its "sound judicial discretion" in deciding whether to require exhaustion, *Shearson v. Holder*, 725 F.3d 588, 593 (6th Cir. 2013) (citation omitted), and judges within this district have waived the exhaustion requirement in somewhat similar circumstances, *see, e.g., Alonso v. Tindall*, No. 3:25-CV-652-DJH, 2025 WL 3083920, at *3 (W.D. Ky. Nov. 4, 2025); *Edahi v. Lewis*, No. 4:25-cv-129-RGJ, 2025 WL 3466682, at *3-4 (W.D. Ky. Nov. 27, 2025).

United States. 28 U.S.C. § 2241(c)(3). And while the Court "may not review discretionary decisions made by immigration authorities, it may review immigration-related detentions to determine if they comport with the demands of the Constitution." *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). The United States Supreme Court has held that the scope of jurisdiction-stripping statutes in the INA are narrow, and do not cover "all claims arising from deportation proceedings" or impose "a general jurisdictional limitation." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S.Ct. 1891, 1907 (2020). Because Petitioner's action requesting a writ of habeas corpus does not seek review of a discretionary decision to "commence proceedings," "adjudicate" a case, or "execute" a removal order, the action falls within this Court's jurisdiction.

A.    Petitioner Perez meets the custody requirement for purposes of habeas corpus relief.

Habeas relief is available where a person is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Section 2241 confers jurisdiction on federal courts to review noncitizens' claims challenging the constitutionality of their detention *during the pendency of removal proceedings.*[14] An individual is also deemed detained or "in custody" for habeas purposes when they are subject to "'significant' post-release 'restraints on [their] liberty' that are 'not shared by the public generally.'" *In re. Stansell*, 828 F.3d 412, 416 (6th Cir. 2016) (citing *Jones v. Cunningham*, 371 U.S. 236, 238, 240, 242 (1963). Federal courts also have jurisdiction to hear § 2241 habeas cases for statutory and constitutional challenges to *post-removal-period detention* pursuant to 8 U.S.C. § 1231. *Zadvydas v. Davis*, 533 U.S. 678, 692 (2001). (*See also Alvarez v. Holder*, 454 F.App'x 769, 772 (11th Cir. 2011) (an individual may seek habeas relief under § 2241 if he is "in custody" under federal authority; short of physical custody,

---

[14] The writ of habeas corpus enables a prisoner to challenge the legality of his detention before a neutral decision-maker. *I.N.S. v. St. Cyr*, 533 U.S. 289, 301-03 (2001). In turn, habeas corpus serves as a critical means for the judiciary to examine the legality of Executive detention, thereby enabling "the Judicial Branch to play a necessary role in maintaining this delicate balance of governance." *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004).

"the Supreme Court has found that the custody requirement is satisfied where restrictions are placed on a petitioner's freedom of action or movement").

The Supreme Court has construed "in custody" within the meaning of Section 2241 more "broad[ly] to include restraints short of physical confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 437 (2004). Like the petitioner in *Alvarez*, Petitioner Perez challenges the constitutionality of the conditions of the order of supervision to which he is subject. Even though he was released from detention, Petitioner Perez remains "in custody" for purposes of habeas relief as he is subject to restraints on his liberty "not shared by the public generally," including the requirements that he not travel outside the United States without first obtaining agency approval and that he report in person to the Department of Homeland Security as periodically ordered. These conditions render Perez "in custody" for purposes of this habeas petition.

B.    Perez's Petition is not moot.

Because Petitioner Perez remains subject to agency-imposed conditions restraining his liberty for habeas purposes, his Petition is not moot. A petitioner no longer in physical custody can meet the case-or-controversy requirement by showing he suffers from collateral consequences of the prior detention that are "concrete" and "likely to be redressed by a favorable judicial decision." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). As Petitioner Perez is challenging the conditions of his release as they currently apply, he satisfies the case-or-controversy requirement. As in *Alvarez*, Petitioner's order of supervision amounts to a collateral consequence of his release that is not moot. *Alvarez*, 454 F. App'x 769, 772-73.

C.    Standard of Review for Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

In adjudicating a Motion to Dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), the Court is required to "accept all well-pleaded allegations of the

complaint as true and construe the complaint in the light most favorable to the plaintiff." *Saalim v. Walmart*, 97 F.4th 995, 1001 (6th Cir. 2024). Although the Complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A Complaint survives a Motion to Dismiss if it "contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. For purposes of this Report and Recommendation, the undersigned has considered all administrative records attached to Petitioner Perez's Amended Complaint, as those are "part of the pleading for all purposes," are "referred to in the complaint," and are "central to the plaintiff's claim." Fed. R. Civ. P. 10(c); *accord. Saalim*, 97 F.4th at 1002.


### III. GOVERNING IMMIGRATION STATUTES

In the Illegal Immigration Reform and Immigrant Responsibility Act (IIRAIRA) of 1996, Congress established two main processes for removing noncitizens determined to be ineligible to remain in the United States. *See* Pub. L. 104-208, 110 Stat. 3009, 3009-546 (1996); *see also Dep't of Homeland Sec. v. Thraissigiam*, 591 U.S. 103, 106, 140 S.Ct. 1959, 207 L.Ed.2d 427 (2020). The "usual removal process"—commonly referred to as "Section 240"—is codified in 8 U.S.C. § 1229a. *Thuraissigiam*, 591 U.S. at 108. The IIRAIRA also provides a second track for expedited removal proceedings as set forth in 8 U.S.C. § 1225(b)(1), which "substantially shorten and speed up the removal process." *Make the Rd. New York v. Wolf*, 962 F.3d 612, 618-19 (D.C.Cir. 2020). Each will be discussed briefly.

**8 U.S.C. § 1225 (INA § 235) Expedited Removal**. 8 U.S.C. § 1225 (INA § 235) governs the expedited removal process for arriving noncitizens following their inspection by immigration officers. In expedited removal, an immigration officer, not an Immigration Judge, conducts the initial fact-finding. 8 C.F.R. § 235.3(b)(2)(i). Noncitizens who arrive at the United States border are treated as applicants for admission under § 1225(a)(1); *Jennings v. Rodriguez*, 138 S.Ct. 830, 836 (2018). When an immigrant is inspected at the border, found to be without documentation such as a travel visa, and the immigrant is without a criminal history and has not been previously ordered removed from the United States, the immigrant may be placed in expedited removal proceedings under § 1225. However, if the immigrant indicates either an intention to apply for asylum or expresses a well-founded "credible fear" of returning to his home country because of the possibility of persecution or torture, the individual will be deemed to be seeking asylum and referred for what is called a "credible fear" interview. § 1225(b)(1)(A)(ii).

The Department of Homeland Security ("DHS") has the discretion to initiate either full removal proceedings under 8 U.S.C. §§ 1229 and 1229a, or expedited removal proceedings under 8 U.S.C. § 1225(b)(1), at the time of a noncitizen's inspection at the border of the United States. Where an immigration officer finds an applicant's asserted fear to be credible, the noncitizen will receive "full consideration" of their asylum claim in a standard removal hearing, i.e., in immigration proceedings pursuant to §240 of the INA (§ 1229a). *See* 8 C.R.F. § 208.30(f). That is, if a noncitizen establishes a credible fear of persecution after being placed into expedited removal proceedings, they must be transferred from expedited removal proceedings to comprehensive § 240 (8 U.S.C. § 1229a) proceedings wherein their claim for asylum is litigated on the merits. *See* 8 C.F.R. §§ 235.4(b)(4) and 208.30.

Where a noncitizen receives a negative credible fear finding, they may still seek statutory withholding of removal or CAT if they meet the higher "reasonable fear" of persecution or torture standard.[15] 8 C.F.R. §§ 208.30(e)(5)(iii), 1208.16(c)(2); *see also E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 843 (9th Cir. 2020). Under the law as it existed at the time of Petitioner Perez's processing, if the credible fear interview resulted in a negative or "no credible fear" finding (due to the third-country-transit ban), but the higher "reasonable fear" standard was met for purposes of withholding of removal or relief under the Convention Against Torture (CAT), the Department of Homeland Security would issue a Notice to Appear in § 240 (1229a) proceedings or retain the alien for further consideration of the noncitizen's claim 8 U.S.C. §§ 208.30(e)(5), 1208.16(c)(2). USCIS has "complete discretion" to either issue a Notice to Appear for full consideration of asylum and withholding of removal claims in Section 240 proceedings or to "retain jurisdiction over the application for asylum." 8 C.F.R. § 208.30(f). "As a practical matter, then, the great majority of asylum seekers who fall within the category subject to expedited removal do not receive expedited removal and are instead afforded the same procedural rights as other aliens." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 111, 140 S. Ct. 1959, 1966, 207 L. Ed. 2d 427 (2020).

**Detention and Release in § 1225 proceedings**. 8 U.S.C. § 1225(b)(1)(B) governs the asylum interview process in expedited removal proceedings, and contains a provision mandating detention of the noncitizen pending a final determination of credible fear:

(B) **Asylum interviews**
        (i)**Conduct by asylum officers**

---

[15]Of critical importance to Petitioner Perez's asylum and immigration case is the distinction between asylum and statutory/CAT protections: "[r]elief under withholding of removal and under CAT is less advantageous than asylum relief. For example, "[u]nlike an application for asylum, [ ] a grant of an alien's application for withholding is not a basis for adjustment to legal permanent residence status, and [the relief] only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country." *E. Bay Sanctuary Covenant v. Barr*, 964 F.3d 832, 843 (citing *Lanza v. Ashcroft*, 389 F.3d 917, 933 (9th Cir. 2004) (internal citations omitted).

An asylum officer shall conduct interviews of aliens referred under subparagraph (A)(ii), either at a port of entry or at such other place designated by the Attorney General.

(ii)**Referral of certain aliens**

If the officer determines at the time of the interview that an alien has a credible fear of persecution (within the meaning of clause (v)), the alien shall be detained for further consideration of the application for asylum.

(iii)**Removal without further review if no credible fear of persecution**

    (I)**In general**

    Subject to subclause (III), if the officer determines that an alien does not have a credible fear of persecution, the officer shall order the alien removed from the United States without further hearing or review.

    (II)**Record of determination**

    The officer shall prepare a written record of a determination under subclause (I). Such record shall include a summary of the material facts as stated by the applicant, such additional facts (if any) relied upon by the officer, and the officer's analysis of why, in light of such facts, the alien has not established a credible fear of persecution. A copy of the interview notes shall be attached to the written summary.

    (III)**Review of determination**

    The Attorney General shall provide by regulation and upon the alien's request for prompt review by an immigration judge of a determination under subclause (I) that the alien does not have a credible fear of persecution. Such review shall include an opportunity for the alien to be heard and questioned by the immigration judge, either in person or by telephonic or video connection. Review shall be concluded as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7days after the date of the determination under subclause (I).

    (IV)**Mandatory detention**

    Any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed.

8 U.S.C.A. § 1225. Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing (Statute effective June 1, 2009 to January 28, 2025).

A noncitizen in § 1225 proceedings may be released from mandatory detention by way of

the exercise of discretionary parole under § 1182(d)(5)(A):

The Attorney General may, except as provided in subparagraph (B) or in section 1184(f) of this title, in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States, but such parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion

of the Attorney General, have been served the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.

8 U.S.C. § 1182(d)(5)(A).

**8 U.S.C. § 1229a (INA §240) Standard Removal Proceedings**. The "usual removal process" under the INA commonly referred to as "Section 240" is codified at 8 U.S.C. § 1229a. *Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020). These comprehensive removal proceedings generally take place before an immigration judge over the course of several months. The immigration judge is an employee of the Department of Justice, a licensed attorney who has a duty to develop the record in cases before them: "The immigration judge shall administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." *Coalition for Humane Immigrant Rights v. Noem*, 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025) (citing 8 U.S.C. § 1229a(a)(1), (b)(1). *Coalition* further describes the breadth of § 240 proceedings:

> They are adversarial proceedings in which the noncitizen has the right to hire counsel, examine and present evidence, and cross-examine witnesses. 8 U.S.C. § 1229a(b)(4). The hearings are recorded, and a transcript is made available if a party appeals the decision. *Id.* § 1229a(b)(4)(C); ECF 22-6 ¶ 13. A section 240 proceeding typically takes place over the course of multiple hearings due to the built-in procedures. ECF 22-6 ¶ 9. This allows time for noncitizens to both gather evidence in support of petitions for relief available in immigration court (like asylum and certain adjustments of status) and seek collateral relief from other components of DHS (like adjustment of status on the basis of marriage or family). *Id.* Upon a decision by the IJ, either party may appeal to the Board of Immigration Appeals (BIA). 8 C.F.R. §§ 1240.15, 1003.1. If the BIA upholds a removal order, the noncitizen may then appeal that decision to a U.S. court of appeals. 8 U.S.C. § 1252.

*Coalition. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *3 (D.D.C. Aug. 1, 2025).

§ 240 proceedings are not final until either the appeal is either exhausted or waived. 8 U.S.C. § 1252; 8 C.F.R. § 1003.39.

**Detention and Release in § 1229a (INA § 240) proceedings**. Detention under § 1229a is governed by 8 U.S.C. § 1231(a)(1)-(3), which provides provides for the detention, release and removal of noncitizens who have been ordered removed. It provides for a ninety-day removal period, followed by what is commonly referred to as the post-removal-period, the time in which noncitizens awaiting removal may be released subject to supervision:

**§ 1231 Detention and removal of aliens ordered removed**
  **(a) Detention, release, and removal of aliens ordered removed**
    **(1) Removal period**
      **(A) In general**
      Except as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the "removal period").
      **(B) Beginning of period**
      The removal period begins on the latest of the following:
        (i)    The date the order of removal becomes administratively final.
        (ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
        (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

***

    **(2) Detention**
    During the removal period, the Attorney General shall detain the alien. Under no circumstance during the removal period shall the Attorney General release an alien who has been found inadmissible under section 1182(a)(2) or 1182(a)(3)(B) of this title or deportable under section 1227(a)(2) or 1227(a)(4)(B) of this title.
    **(3) Supervision after 90-day period**
    If the alien does not leave or is not removed within the removal period, the alien, pending removal, shall be subject to supervision under regulations prescribed by the Attorney General. The regulations shall include provisions requiring the alien –
    **(A)** to appear before an immigration officer periodically for identification;
    **(B)** to submit, if necessary, to a medical and psychiatric examination at the expense of the United States Government;
    **(C)** to give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate; and
    **(D)** to obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.

8 U.S.C. § 1231(a)(1)-(3).

The Court must determine whether Perez's detention was governed exclusively by 8 U.S.C. § 1225 (the expedited removal statute), under which his release could have been granted via discretionary parole pursuant to § 1182(d)(5)(A), or whether his detention status changed from § 1225 to § 1229a governance, with his post-removal-order release properly granted, subject to supervision pursuant to § 1231(a)(1)-(3).

## IV. RELIEF SOUGHT BY PETITIONER PEREZ

Compared to many immigration-related cases currently pending in this Court, this case presents an unusual set of facts. At the time of filing his Complaint, Petitioner Perez was (and to the Court's knowledge remains) within the United States free from detention but subject to supervision; he seeks habeas corpus relief from supervision and a finding that § 1225 mandatory detention *does* apply to his case. Specifically, Petitioner Perez seeks habeas relief from the December 30, 2020, ICE Form 220-B Order of Supervision that released him from detention into the United States subject to conditions. According to his April 3, 2025, Amended Complaint [DN 11], Perez seeks three forms of relief from this Court: 1) a writ of habeas corpus relieving him of an Order of Supervision placed on him by ICE pursuant to 8 U.S.C. § 1231(a)(3); 2) an order compelling Respondent ICE to document Petitioner's release on parole on a "completely executed Form I-94" pursuant to 8 U.S.C. § 235.1(h)(2); and 3) an order vacating the February 26, 2025, USCIS Decision denying Petitioner's Form I-485.

Petitioner Perez alleges that Respondents—Supervisory Detention and Deportation Officer, in his/her official capacity as Louisville Field Office Director, Enforcement and Removal Operations, U.S. Immigration and Custom Enforcement; Robert Guadian, in his official capacity as Field Director of Enforcement and Removal Operations at the Chicago Field Office of

Immigration and Customs Enforcement; and Teri Robinson in her official capacity as Director of the National Benefits Center of U.S. Citizenship and Immigration Services—have unlawfully subjected him to supervision under 8 U.S.C. § 1231(a)(3) in violation of the INA; unlawfully failed to parole him into the United States under the INA; and taken unlawful agency action against him by denying his Form I-485 Application to Register Permanent Resident or Adjust Status under the Cuban Adjustment Act. Petitioner seeks habeas, declaratory and administrative relief in this Court pursuant to the United States Constitution, Article I § 9, cl. 2 (Suspension Clause), 28 U.S.C. § 1651 (All Writs Act), 28 U.S.C. §§ 2201-02 (declaratory relief), 28 U.S.C. § 2241 (habeas corpus), and the Administrative Procedures Act, 5 U.S.C. § 702. [DN 11] at 4-5.

Petitioner Perez argues that he was paroled as a matter of law:

- his expedited-removal status under § 1225, coupled with the asylum officer's finding of "no credible fear," resulted in a final Order of Expedited Removal;

- § 1225 mandates detention under these circumstances – "any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed," § 1225(b)(1)(B)(iii)(IV); and

- because he was released from § 1225 custody, the only possible mechanism for that release is via discretionary parole under 8 U.S.C. § 1182(d)(5)(A). Therefore, he must have been granted parole on his December 30, 2020, release from custody.

Response, [DN 15], at 2-5.

Petitioner's legal argument for each form of relief he seeks is based upon the exclusive application of § 1225 expedited removal proceedings, particularly the detention mandate of 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), to his immigration case. Paroled status from expedited removal

16

under § 1225 via § 1182(d)(5)(A) then is key to each of Petitioner's causes of action: that ICE's I-220B Order of Supervision was issued erroneously subjecting him to unlawful restraint, that he should have instead been issued a Form I-94 reflecting his paroled status into the United States, and that his Form I-485 Application to Register Permanent Residence or Adjust Status under the Cuban Adjustment Act should have been granted.

The Respondents' position in their Motion to Dismiss is that 8 U.S.C. § 1231(a)(1)-(3) controls—that mandatory detention of Petitioner Perez under §235 or 1225(b)(1) expedited removal proceedings ended once his asylum application was adjudicated with finality in a § 240 (§ 1229a) proceeding. Respondents maintain that Perez was under an August 18, 2020, Final Order of Removal at the time of his release in December of 2020; because he was not removed within 90 days of his Final Order of Removal, he could be released subject to supervision pursuant to 8 U.S.C. § 1231(a)(3). Respondents argue that Perez was properly released subject to supervision under the terms of the ICE Form I-220B. Citing *Zadvydas v. Davis*, 533 U.S. 678 (2001), Respondents note that § 1231 governs detention and release following removal proceedings:

> The post-removal-period detention statute is one of a related set of statutes and regulations that govern detention during and after removal proceedings. While removal proceedings are in progress, most aliens may be released on bond or paroled. 66 Stat. 204, as added and amended, 11 Stat. 3009-585, 8 U.S.C. §§ 1226(a)(2), (c) (1994 ed. Supp. V). After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody. § 1231(a)(2). Subsequently, as the post-removal-period statute provides, the Government "may" continue to detain an alien who still remains here or release that alien under supervision. § 1231(a)(6).

*Zadvydas v. Davis*, 533 U.S. 678, 683, 121 S. Ct. 2491, 2495, 150 L. Ed. 2d 653 (2001).

## V. STATUTORY APPLICATION TO PETITIONER PEREZ

Upon his arrival at the United States southern border, it is undisputed that Petitioner Perez was initially placed into expedited removal proceedings under 8 U.S.C. § 1225(b). He was granted a credible fear interview by an asylum officer under § 1225(b)(1)(B), received a negative "credible fear" finding for purposes of asylum, but received a positive "reasonable fear" finding for purposes of statutory withholding of removal and CAT protection. It is at this procedural point that the parties diverge. Each of Petitioner Perez's arguments will be addressed within the context of the applicable statutes, regulations, and facts supported by the record before the Court.

A.     Perez's expedited-removal status under § 1225, coupled with the asylum officer's finding of "no credible fear," did **not** result in a final Order of Expedited Removal.

Perez argues that his custody continued to be governed by § 1225 because during the expedited removal processing and credible fear screening, an asylum officer determined him to be ineligible for asylum and assigned a negative credible fear finding— "a determination that made the expedited-order-of-removal become administratively final." [DN 11] at 3, ¶4. However, the undersigned has found no legal authority to support Petitioner's position, and the record before the Court does not support Petitioner Perez's argument.

Petitioner's argument is inconsistent with the procedures and screening process guidance in effect at the time of his credible fear interview. Specifically, the screening process established by the Departments of Justice and Homeland Security instructed as follows:

> For an alien subject to expedited removal, DHS will ascertain whether the alien seeks protection, consistent with INA 235(b)(1)(A)(ii), 8 U.S.C. 1225(b)(1)(A)(ii). All such aliens will continue to go before an asylum officer for screening, consistent with INA 235(b)(1)(B), 8 U.S.C. 1225(b)(1)(B). The asylum officer will ask threshold questions to elicit whether an alien is ineligible for a grant of asylum pursuant to the third-country-transit bar. If there is a significant possibility that the alien is not subject to the eligibility bar (and the alien otherwise demonstrates that there is a significant possibility that he or she can establish eligibility for asylum), then the alien will have established credible fear. If, however, an alien lacks a

significant possibility of eligibility for asylum because of the third-country-transit bar, then the asylum officer will make a negative credible-fear finding. The asylum officer will then apply the reasonable-fear standard to assess the alien's claims for statutory withholding of removal or CAT protection. **An alien subject to the third-country-transit asylum eligibility bar who clears the reasonable-fear screening standard will be placed in section 240 proceedings, just as an alien who clears the credible-fear standard will be.** In those proceedings, the alien will also have an opportunity to raise whether the alien was correctly identified as subject to the third-country-transit ineligibility bar to asylum, as well as other claims. If an immigration judge determines that the alien was incorrectly identified as subject to the third-country-transit bar, the alien will be able to apply for asylum. Such aliens can appeal the immigration judge's decision in these proceedings to the Board and then seek review from a Federal court of appeals.

Asylum Eligibility and Procedural Modifications, Interim Final Rule, 84 Fed. Reg. 33,829, 33837-8 (July 16, 2019). (Emphasis added.)

The record indicates that Petitioner received the procedural protections outlined in the above-referenced guidance. Petitioner Perez's case was moved from § 1225 expedited removal to standard removal proceedings governed by § 1229a with the issuance of the Notice to Appear following the asylum officer's positive "reasonable fear" finding (for purposes of statutory withholding and CAT protection claims). The language contained on the face of the February 4, 2020, Notice to Appear bears this out: "Department of Homeland Security Notice to Appear in removal proceedings under section 240 [8 U.S.C. § 1229a] of the Immigration and Nationality Act …. This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture." [DN 11-1] at 32.

The record before the Court contains no Order of Expedited Removal; notably, the Notice and Order of Expedited Removal (NOER) Form I-860 is incomplete in both the Order and Certificate of Service portions of the form. [DN 11-1] at 10. In addition, the Notice to Appear in § 240 proceedings includes a line and box for indicating that a Section 235(b)(1) Order (of Expedited Removal) was vacated – but it is not marked, as no Order of Expedited Removal was ever entered in Perez's expedited removal proceedings. *Id.*; see also [DN 11-1] at 10. In *Agarwal v. Lynch*, 610

F.Supp.3d 990 (E.D. Mich. 2022), the court considered several factors in concluding that a Final Expedited Removal Order had not been issued, including: the Final Expedited Removal Order had not been reviewed and approved by a supervisor as required by 8. C.F.R. § 253.3(b)(7); there were irregularities in the supervisory signature lines on the Order including white-out; the box on the Order that is to be checked if "supervisory concurrence was obtained by telephone or other means (no supervisor on duty)" was not checked; and the Certificate of Service portion of the Order of Expedited Removal was incomplete. In Perez's case, the Notice and Order of Expedited Removal (NOER) Form I-860 lacks the name, title and signature of the immigration officer as well as the name, title and signature of the reviewing supervisor. Additionally, there is no name or date in the Certificate of Service portion of the Notice and Order of Expedited Removal. [DN 11-1] at 10. The incomplete face of the Notice and Order of Expedited Removal coupled with the February 4, 2020, issuance of the Notice to Appear in regular § 240 (1229a) invalidate Perez's argument that a final Order of Expedited Removal was issued in his case.

B.   <u>§ 1225 mandated detention of Petitioner Perez – "any alien subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed," § 1225(b)(1)(B)(iii)(IV) – **but only until his case was finally determined in comprehensive § 240 (1229a) proceedings**</u>.

The second part of Petitioner's argument relies upon the same basic assumption, that § 1225 expedited removal procedures applied to him exclusively and definitively throughout his immigration process. Perez posits that he was subject to mandatory, indefinite detention pursuant to 8 U.S.C. § 1225(b)(1)(B)(iii)(IV) at the time of his release from custody because the asylum officer made an initial finding of no credible fear, and his release could only have been lawfully made as a discretionary parole under 8 U.S.C. § 1182(d)(5)(A). This discretionary parole statute provides authority to the DHS Secretary to grant parole "under such conditions as [she] may

prescribe" and "only on a case-by-case basis for urgent humanitarian reasons or significant public benefit." *Id*. Parole "shall not be regarded as an admission of the alien." *Id*. And the DHS Secretary may, in her discretion, terminate any grant of parole and return the noncitizen to "the custody from which he was paroled." *Id*. At that point, the noncitizen's case "shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id*. There are no documents before the Court that indicate Petitioner Perez was ever granted discretionary parole by the DHS Secretary.

Section 1225(b)(1)(B)(iii) is entitled "Removal without further review if no credible fear of persecution" and sets forth the procedures for documenting credible fear interviews, review of their findings, and mandatory detention. However, in Petitioner Perez's case, we know that there was further review based upon his clearing the "reasonable fear" standard for statutory withholding and CAT protection and the subsequent issuance of a Notice to Appear in regular § 240 (§ 1229a) proceedings. At the § 240 hearing the immigration judge addressed statutory withholding and CAT protection and also undertook further review of Petitioner Perez's asylum claim.[16] Petitioner Perez concedes as much in his Amended Complaint:

> On August 18, 2020, the immigration judge issued an order denying any relief from removal and ordering his removal from the United States to Cuba. App., pp. 45-45.

Amended Complaint, [DN 11-1] at 18, ¶ 74.

This reading is consistent with the regulatory guidance offered in the Asylum Eligibility and Procedural Modifications Interim final rule:

---

[16] As Petitioner Perez concedes, on August 18, 2020, the immigration judge issued an order denying him any relief from removal and ordering his removal from the United States to Cuba. Amended Petition [DN 11] at 18, ¶ 74. In footnote four of his Amended Petition, Petitioner notes that "it appears the immigration judge erroneously considered the petitioner's application for asylum, despite being ruled ineligible for said relief pursuant to the third-country-transit-ban of 8 C.F.R. 208.12(c)(4)." However, as footnoted above, there was a period of time in which the third-country-transit ban was vacated following *Cap. Area Immigrants' Rts. Coal. v. Trump*, 471 F.Supp.3d 25 (D.D.C. June 30, 2020). It is possible that the immigration judge conducted the asylum analysis anew to give Petitioner the benefit of the stay of the third-country-transit ban at his August 18, 2020 hearing.

Aliens determined to be ineligible for asylum by virtue of falling subject to the third-country-transit bar, however would still be screened, but in a manner that reflects that their only viable claims could be for statutory withholding or CAT protection pursuant to 8 C.F.R. 208.30I(2)-(4) and 1208.16. After determining the alien's ineligibility for asylum under the credible-fear standard, the asylum officer would apply the long-established reasonable-fear standard to assess whether further proceedings on a possible statutory withholding or CAT protection claim are warranted. If the asylum officer determined that the alien had not established the requisite reasonable fear, the alien then could seek review of that decision from an immigration judge (just as the alien may under existing 8 CFR 208.30 and 208.31), and would be subject to removal only if the immigration judge agreed with the negative reasonable-fear finding. Conversely, **if either the asylum officer or the immigration judge determined that the alien cleared the reasonable-fear threshold, the alien would be put in section 240 proceedings, just like aliens who receive a positive credible-fear determination for asylum.**

Asylum Eligibility and Procedural Modifications, Interim Final Rule, 84 Fed. Reg. 33,829, 33837-8 (July 16, 2019). (Emphasis added.)

Petitioner's parole as a matter of law argument assumes a final negative credible fear finding, entry of an administratively final order of expedited removal, and a statutory scheme that does not accommodate a status change from expedited to comprehensive proceedings. Petitioner assumes that the asylum officer's finding of "no credible fear" cements his proceedings in § 1225 to the exclusion of any other statute's application. These positions are unsupported by the facts in this case or the applicable law.

The Supreme Court has explained that detention under § 1225 expedited removal proceedings is mandated until one of two events occurs, either immigration officers have finished considering the application for asylum OR removal proceedings under (§ 240) section 1229a have concluded:

Section 1225(b)(1) mandates detention "for further consideration of the application for asylum," § 1225(b)(1)(B)(ii), and § 1225(b)(2) requires detention "for a [removal] proceeding," § 1225(b)(2)(A). The plain meaning of those phrases is that detention must continue until immigration officers have finished "consider[ing]" the application for asylum, § 1225(b)(1)(B)(ii), or until removal proceedings have concluded, § 1225(b)(2)(A).

*Jennings v. Rodriguez*, 138 S.Ct. 830, 844 (2018). It is clear from the Supreme Court's explanation of mandatory detention in *Jennings* that these statutory provisions are not mutually exclusive but reflect the very mechanism that operated in Petitioner Perez's case to remove his asylum claim from expedited removal proceedings into regular § 240 (§ 1229a) proceedings where it was finally determined by an immigration judge.

As noted by the Respondents, 8 U.S.C. § 1231(a) explicitly provides for the detention, release, and supervision of individuals who are subject to an order of removal. The only order of removal before this Court is the one referenced in the §240 (1229a) hearing summary as entered by the immigration judge. Respondents point out that § 1225 applies while removal is being considered and removal proceedings are ongoing, but detention after entry of a final order of removal is governed by § 1231; *Zadvydas v. Davis*, 533 U.S. 678 (2001) explains the difference:

> While removal proceedings are in progress, most aliens may be released on bond or paroled. After entry of a final removal order and during the 90-day removal period, however, aliens must be held in custody. § 1231(a)(2). Subsequently, as the post-removal-period statute provides, the Government 'may' continue to detain an alien who still remains here or release that alien under supervision. § 1231(a)(6).

*Id*. at 696.

At the point of the asylum officer's "reasonable fear" of torture finding and the resulting Notice to Appear, Petitioner Perez's asylum claim was removed from expedited proceedings under § 1225 to a regular removal proceeding under § 1229a. These procedures align squarely with the third-country-transit ban guidance which contemplated that some cases would necessarily be taken out of the § 1225 expedited removal process and moved into the more comprehensive § 1229a removal proceeding "just like aliens who receive a positive credible-fear determination for asylum" and where claims for asylum and other relief could be heard on the merits before an immigration judge. This statutory process is also consistent with caselaw finding that an individual

cannot be in two removal proceedings simultaneously. *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *7 (N.D. Cal. Sept. 12, 2025).

Courts are to review a statute "so that effect is given to all its provisions." *Hibbs v. Winn*, 542 U.S. 88, 101 (2004) (citation omitted); *see also Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (noting that courts "must give effect to the clear meaning of statutes as written" (citation omitted)). Interpretation of a statute "begins with the statutory text, and ends there as well if the text is unambiguous." *In re. Vill. Apothecary, Inc.*, 45 F.4th 940, 947 (6th Cir. 2022) (citation omitted). "The Court must also use every tool at [its] disposal to determine the best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). There is no inherent conflict or contradiction between §§ 1225 and 1231(a). More importantly, as they were applied in Petitioner Perez's case, they operated to provide him the opportunity for a more thorough review of his asylum, withholding of removal, and CAT claims before an immigration judge.

## C.  Petitioner Perez was not released from § 1225 custody via discretionary parole under 8 U.S.C. § 1182(d)(5)(A) on December 30, 2020.

Noncitizens who have been admitted or paroled into the United States can seek withholding of removal, pursuant to an application for asylum, or they may apply for "adjustment of status," i.e., lawful permanent residence status pursuant to the Cuban Adjustment Act. Both the granting (or withholding) of parole and adjustment of status are discretionary determinations reserved exclusively to the immigration agencies. Certain forms of adjustment of status are available to noncitizens in § 240 (§ 1229a) proceedings, but most means of adjustment of status must be obtained only through separate applications to USCIS:

> [N]oncitizens who were admitted or paroled into the United States can seek "adjustment of status," granting them lawful permanent resident status, on a variety of bases. 8 U.S.C. § 1255. For instance, the noncitizen or their spouse may seek the noncitizen's adjustment of status if the spouse is a U.S. citizen. *See id.* § 1154(a)(1)(A). Parents and children of U.S. citizens may do the same. *See id.* So

may noncitizens who were victims of human trafficking, *id.* § 1255(l), victims of crimes against women, *id.* § 1255(m), or juveniles abused or abandoned by their parents, *id.* § 1101(a)(27)(J), § 1255(g). So, too, may Cuban natives or citizens who were inspected and admitted or paroled at a port of entry and have been physically present in the United States for at least one year. 8 U.S.C. § 1255 note.

Noncitizens may pursue some of those forms of relief in section 240 proceedings, but most can be obtained only through separate applications to USCIS or another entity. ECF 22-6 ¶ 9. In section 240 proceedings, noncitizens typically have time to pursue such collateral relief through USCIS. *Id.* ¶¶ 9–10. Not so in expedited removal proceedings. Indeed, none of those forms of relief is available to noncitizens in expedited removal unless they manage to establish credible fear and get transferred back to section 240 proceedings.

*Coal. for Humane Immigrant Rts. v. Noem*, No. 25-CV-872 (JMC), 2025 WL 2192986, at *9 (D.D.C. Aug. 1, 2025).

Petitioner Perez was not inspected and paroled into the United States before his removal proceeding was adjudicated. Nonetheless, Perez filed an I-485 Application to Register Permanent Residence or Adjust Status[17] under the Cuban Refugee Adjustment Act (CAA), Public Law 89-732 (November 2, 1966). [DN 11] at 19. To qualify for adjustment under Section 1 of the Cuban Adjustment Act, an applicant must:

Be a native or citizen of Cuba;

Be inspected and admitted or paroled into the United States;

Be physically present in the U.S. for at least 1 year prior to filing for adjustment;

Be eligible to receive an immigration visa;

Be admissible to the United States for permanent residence; **and**

Merit the favorable exercise of **discretion**.

---

[17] "Adjustment of Status" is the process by which noncitizens who are physically present in the United States can apply for lawful permanent resident status without having to return to their home country to obtain an immigrant visa, 8 U.S.C. § 1255. Federal regulations prohibit aliens from directly appealing denials of adjustment of status, directing instead that such challenges must be raised, if at all, in removal proceedings. 8 C.F.R. § 245.2(a)(5)(ii) ("No appeal lies from the denial of an application [for adjustment of status] by the director, but the applicant, if not an arriving alien, retains the right to renew his or her application in proceedings under 8 C.F.R. part 240.") *Lacey v. Gonzales*, 499 F.3d 514, 519 (6th Cir. 2007).

USCIS Notice of Decision, [DN 11-2] at 1; Cuban Refugee Adjustment Act (CAA), Pub.L. No. 89-732, 80 Stat. 1161 (1966). (Emphasis added.)

The Notice of Decision indicates that Petitioner's I-485 Application was denied on the basis that he was not paroled into the United States.[18] Perez posits that for people in his position who have received a negative fear determination, § 1225(b)(1)(B)(iii)(IV) mandates detention (the only release from which is via discretionary parole). It is not lost on this Court how this statute is being argued by Respondents in other immigration cases. However, the Court has found no legal support for "parole as a matter of law" under the discretionary § 1182(d)(5)(A) parole statute. One district court recently utilized the term "parole as a matter of law" within the *pre-removal* context:

> Prior to 2023 Cuban nationals who entered the United States without prior approval and were released with a Form I-220A were deemed an applicant for admission who were subject to mandatory detention under § 235(b) of the INA. However, because DHS has no authority to release someone from mandatory detention unless it uses parole authority, release under Form I-220A (release on recognizance) implies the person was paroled as a matter of law, even if no formal parole document was issued. This is an important distinction because relief under the Cuban Adjustment Act requires the applicant be admitted or paroled into the United States.

*Cardin Alvarez v. Rivas*, No. CV 25-02943 PHX GMS (CDB), 2025 WL 2898389, at *2 (D. Ariz. Oct. 7, 2025), report and recommendation adopted in part, rejected in part sub nom. *Alvarez v. Rivas*, No. CV-25-02943-PHX-GMS, 2025 WL 2899092 (D. Ariz. Oct. 10, 2025).

The circumstances of Perez's entry, credible fear interview, and detention pending a standard §240 (§ 1229a) hearing differ substantially from the scenario described in *Cardin Alvarez*. Petitioner was not released into the United States with a Form I-220A while his application was pending. Instead, Perez remained in detention until his case was decided in a comprehensive § 240 hearing and was only released *after* his order of removal. Furthermore, it is not entirely clear that

---

[18] The USCIS Notice of Decision denying Petitioner's application for adjustment under the Cuban Adjustment Act indicates that the decision is not appealable, but that he retained options to file a motion to reopen or a motion to reconsider within 30 days of receiving the Notice of Decision. [DN 11-1] at 3. It is unknown whether Petitioner Perez exercised either of these options, and this Report and Recommendation makes no findings pertaining to whether pursuit and/or exhaustion of either of those remedies was required before filing this action.

Perez would have been released from detention at all, but for his medical conditions and the agency's compliance with the judicially-ordered Covid-19 mandate in *Fraihat v. U.S. Immigration and Customs Enforcement*, 445 F.Supp.3d 709 (C.D. Cal. 2020).

Immigration law clearly enables the Executive Branch to exercise its discretion to temporarily allow noncitizens into the United States who are applying for admission to the country instead of holding them in detention. 8 U.S.C. § 1182(d)(5)(A). That agency discretion was simply not exercised in Perez's case, and the Court cannot read § 1225 in a vacuum as is necessary to give credence to his parole as a matter of law argument.

After extensive review of the procedures followed in Petitioner Perez's removal proceedings, it is clear that his case was removed from expedited removal under § 1225 to a removal case governed by § 1229a. Once the final Order of Removal was entered on August 18, 2020, Perez was no longer within the purview of § 1225 mandatory detention from which he could only be paroled. As pointed out by Respondents, the Supreme Court noted in *Zadvydas* that in the post-removal period, "[t]he choice, however, is not between imprisonment and the alien "living at large …. It is between imprisonment and supervision under release conditions that may not be violated." 533 U.S. 696. And Petitioner Perez's actual interest, approval of his Form I–485 for adjustment of status, is completely out of reach, because the ultimate decision to grant or deny an I–485 petition rests not with this Court but, in the event of dispute, in the sole discretion of a separate, independent administrative agency. *Patel v. U.S. Citizenship & Immigr. Servs.*, 732 F.3d 633, 642 (6th Cir. 2013).

## V. <u>CONCLUSIONS OF LAW</u>

Petitioner Perez's immigration proceedings precisely followed the applicable statutory and regulatory immigration provisions; at the time of his post-removal-order release, 8 U.S.C. § 1231(a) lawfully subjected him to supervision; he was not a recipient of discretionary parole into the United States under § 1182; and this Court lacks the authority to intervene in the USCIS's discretionary denial of his I-485 Application to Register Permanent Residence or Adjust Status under the Cuban Refugee Adjustment Act. All indications are that Perez has been and remains compliant with the release conditions imposed upon him in 2020, and the Court finds no legal justification to disturb the December 30, 2020, ICE Form I-220B Order of Supervision. Similarly, the Court finds there are no legal bases to order DHS to exercise its discretionary parole authority or to intervene in USCIS's discretionary denial of Petitioner's I-485 Application.

## VI. <u>RECOMMENDATION</u>

Under Fed. R. Civ. Pro. 12(b)(6), the undersigned recommends that Respondents' Motion to Dismiss be GRANTED and Petitioner Perez's Amended Petition for Writ of Habeas Corpus and Complaint for Injunctive and Declaratory Relief [DN 11] be DISMISSED without prejudice to his right to file a new § 2241 petition in the future if a change in his circumstances occurs.

## <u>NOTICE FOR FILING OBJECTIONS</u>

Under the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party

has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985).

February 2, 2026

Copies to: Counsel of Record

**Lanny King, Magistrate Judge**
**United States District Court**